# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MAXIMINO BUENAVENTURA, *et al.*,

    Plaintiffs,

v.

CHAMPION DRYWALL, INC. OF
NEVADA, *et al.*,

    Defendants.

Case No. 2:10-cv-00377-LDG (RJJ)

**ORDER**

The plaintiffs--Maximino Buenaventura, Marcelo Hernandez and Eloy
Pumarino–were employed by defendant Champion Drywall, Inc. of Nevada.  The plaintiffs
allege that they regularly worked more than forty hours per week but were not paid
overtime compensation.  In their original complaint, the plaintiffs alleged a Fair Labor
Standards Act claim against Champion Drywall and four of Champion Drywall's officers and
directors.  The plaintiffs also alleged state law claims against Champion Drywall.  In
addition, the plaintiffs further alleged that, pursuant to Nev. Rev. Stat. 608.150, TCR
Nevada Construction Limited Partnership,[1] Warmington Homes Nevada, Vanguard

---

[1]    Shortly after filing the original complaint, the plaintiffs moved for leave to file a
proposed First Amended Complaint for the purpose of correctly identifying "Trammell Crow

Construction, LLC., and KB Home Nevada are liable as original contractors for money owed to the plaintiffs by Champion under state law.

The Court dismissed the four individual defendants because the plaintiffs failed to allege facts permitting an inference that any of the four individuals was an "employer" for purposes of the FLSA.

The plaintiffs now move (#75) for leave to file a proposed Second Amended Complaint, seeking to add Warmington Residential Nevada as an additional original contractor defendant, and to correct the deficiencies in the FLSA claims against the four individual defendants.  The defendants oppose the motion (#83).  The Court will deny the motion, but without prejudice to plaintiffs filing a further motion that seeks leave to file a proposed amended complaint that comports with this order.

The plaintiffs further move (#76) for collective action certification and court-supervised notice of pending collection action as to their FLSA claim.  Champion (the only defendant against whom the FLSA claim was pending when the motion was filed) opposes the motion (#82).  The Court will deny the motion.

The original contractor defendants–TCR Nevada Construction Limited Partnership, KB Home Nevada, Inc. and Warmington Homes Nevada–move for summary judgment (#90), arguing that plaintiffs cannot provide any evidence that they are liable for any labor-related debt with regard to the plaintiffs.  The plaintiffs oppose the motion (#100), asserting that §608.150 turns general contractors into sureties for the labor-related debts of their subcontractors.  The Court will grant the motion.

Champion moves for summary judgment (#95), arguing that the plaintiffs cannot offer legitimate evidence that they actually worked overtime or that they are owed any

_____

Residential" as "TCR Nevada Construction Limited Partnership."  The Court granted that motion, but the plaintiffs did not file the proposed First Amended Complaint.  Nevertheless, TCR Nevada Construction has appeared and defended this action as if properly named and served.

money on handwritten "abono" notes.  The plaintiffs oppose the motion (#99), asserting that issues of material fact remain in dispute.  The Court will grant the motion as to the plaintiffs' claims resting upon allegations of further monies owed pursuant to abono notes, but will deny the motion to the extent plaintiffs claims rest upon allegations that they worked overtime hours for which they have not been properly compensated.

Standard of Review for Summary Judgment

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the court may grant judgment as a matter of law.  Fed. R. Civ. Pro. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one required to prove a basic element of a claim.  *Anderson,* 477 U.S. at 248.  The failure to show a fact essential to one element, however, "necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.*  "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  As such, when the non-moving party bears the initial burden of proving, at trial, the

claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Conversely, when the burden of proof at trial rests on the party moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro. 56(e).  As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the evidence before it "in the light most favorable to the opposing party."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The allegations or denials of a pleading, however, will not defeat a well-founded motion.  Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Champion's Motion for Summary Judgment

Overtime Claims

Champion argues that the plaintiffs cannot offer evidence supporting a *prima facie* claim for overtime pay under federal and state law.  Relevant to the evidence the plaintiffs must produce to meet their initial burden, the Supreme Court has instructed: "In such a situation [where the employer's records are inaccurate or inadequate] we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Anderson v.*

4

1   *Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).[2]  The Court disagrees with

2   Champion's argument that the plaintiffs have not offered sufficient evidence raising a

3   triable issue of fact whether they performed work for which they were not properly

4   compensated, and sufficient evidence raising a triable issue as to the amount and extent of

5   that work as a matter of just and reasonable inference.  Each of the plaintiffs testified, in

6   their depositions, that they regularly worked from Monday through Saturday, and on

7   occasion (once or twice a month) worked on Sunday, and regularly worked at least eight

8   hours on days that they worked.  Champion argues that the plaintiffs contradicted this

9   testimony, as well as similar statements asserted in declarations, elsewhere in their

10  declarations.  An inability to recall or estimate the number of hours worked weekly,

11  however, does not contradict a statement of regularly working six full days in a week.  As

12  the Court must view the evidence in the light most favorable to the plaintiffs, such an

13  inability could simply reflect an inability to recall the specific number hours worked each

14  particular week, or an inability to estimate the average number of hours worked each week

15  over the plaintiff's history with Champion.  An admission that a plaintiff sometimes worked

16  two, three or four days in a week does not contradict a statement of regularly working six

17  full days in a week.  An employee can both regularly work six days in a week and, on

18  occasion, work less than five days a week.  An employee can both remember regularly

19  working six days a week and yet not remember the specific weeks in which he worked less

20  than forty hours per week.  An employee can both remember regularly working six days a

21  week and yet not remember the specific weeks in which he worked more than forty hours

22  per week.  An employee can both remember regularly working six days a week and yet not

23  _____

24      [2]      Champion has acknowledged that, for purposes of its motion for summary
    judgment, it has sought summary judgment under the *Anderson* standard that applies in
25  circumstances in which an employer has not maintained proper and accurate records by
    which an employee can meet his burden of proving that he performed work for which he
26  was not properly compensated.  *See,* Champion's Reply, at 6. fn 3.

1    remember the specific weeks in which he worked seven days in a week, or remember the

2    specific Sundays on which he worked.  An inability to recall specific dates of working more

3    or less than eight hours a day, or to recall specific weeks of working more or less than forty

4    hours does not require the rejection, as a matter of law, of the plaintiffs' testimony of

5    regularly working six days a week.  In the specific context of inaccurate records by an

6    employer (which this Court assumes for purposes of this motion), the plaintiffs need only

7    show (in opposing Champion's motion for summary judgment) that the evidence, when

8    viewed in the light most favorable to them, permits a *just and reasonable inference* of the

9    extent and amount of hours worked without proper compensation.  As stated by the

10   Supreme Court: "It is enough under these circumstances if there is a basis for a reasonable

11   inference as to the extent of the damages." *Id.*, at 688.  The plaintiffs have met their

12   burden in opposing summary judgment.  Accordingly, Champion is not entitled to summary

13   judgment on the plaintiffs' federal and state claims resting upon their allegation of unpaid

14   overtime wages.

15          Abono Claims

16          Plaintiffs have not, however, proffered sufficient evidence to raise a triable issue of

17   fact in regard to their unjust enrichment and promissory estoppel claims.  In their complaint,

18   the plaintiffs alleged that Champion issued them "IOUs," which they also term "abono

19   notes."  When a plaintiff's supervisor did not have an official budget for a particular project

20   but payment was due to the plaintiff, the supervisor would estimate the amount owed

21   (based upon similar projects), pay the amount estimated, and give the plaintiff an abono

22   note reflecting the amount paid.  Hernandez conceded, in his deposition, that his

23   supervisor would subsequently settle up the difference between the estimate and the

24   actual amount owed "all the time," and that sometimes the amount estimated and paid (and

25   reflected on the abono note) was more than the actual amount owed.  In such

26   circumstances, the excess would be subsequently deducted.  Buenaventura conceded, in

6

1  his deposition, that he didn't know if the amounts reflected on the abono notes was more or

2  less than what he was owed, and that he lacked any knowledge as to whether he was

3  owed any money with respect to any particular abono note.

4          The plaintiffs rely upon Golchuk's deposition testimony in asserting that they have

5  raised a triable issue of fact.  In his deposition, Golchuk acknowledged that employees

6  would receive estimated payments.  He further testified that the supervisor "estimated it,

7  and if something happened the following week, he would just pay them over."  The

8  testimony does not create a triable issue of fact that Champion issued but did not settle an

9  abono note.  Plaintiffs further assert that the abono notes include key information that,

10  when matched up with the relevant budgets for tracts and lots at issue, and when

11  additionally matched up with Champion's pay records, will permit a determination of the

12  amount of money owed.  Plaintiffs indicate, however, that they have not performed this

13  calculation because Champion has not disclosed budgets or pay records.  The Court

14  notes, however, that Champion brought its motion for summary judgment after discovery

15  was closed.  Further, as plaintiffs did not bring a motion to compel disclosure of requested

16  documents that Champion did not produce, the Court must assume that the plaintiffs

17  received all documents that they requested in discovery.  As discovery is closed, plaintiffs'

18  concession that they lack evidence to establish that they are owed money for any particular

19  abono note requires a finding that Champion is entitled to summary judgment on the

20  plaintiffs' abono note claims.

21  Original Contractors' Motion for Summary Judgment

22          The plaintiffs seek to hold the original contractors jointly liable with Champion on

23  their state law overtime, waiting time, and abono note (unjust enrichment and promissory

24  estoppel) claims.  The original contractors seek summary judgment, asserting that the

25  plaintiffs cannot show that they are liable for any labor-related debt owed to plaintiffs by

26  Champion.  Plaintiffs' cursory opposition incorporates, by reference, their opposition to

Champion's motion, conceding that the original contractor defendants "will only be held liable if Champion is liable" and thus "as a threshold matter the Court must first examine Champion's likely liability."  The Court agrees and, as the plaintiffs cannot maintain their abono note claims against Champion, they cannot maintain these claims against any of the original contractors.

Plaintiffs raise additional–and rather brief–arguments asserting that issues of material fact remain whether they worked overtime on the projects of original contractors.  Each plaintiff offers a single Champion[3] time record which states, on its face, that the respective plaintiff worked all five days of one particular week, for a total of forty hours, on one particular job.[4]  The plaintiffs each argue that, as Champion's time records are inaccurate, they have met their evidentiary burden of showing a triable issue of fact under the *Anderson* burden-shifting analysis.  The plaintiffs' argument is without merit and their evidence defeats their claims against the original contractor defendants.

Pursuant to N.R.S. 608.150:

> Every original contractor making or taking any contract in this
> State for the erection, construction, alteration or repair of any
> building or structure, or other work, shall assume and is liable

---

[3]    In their opposition to the motion for summary judgment brought by the original contractor defendants, the plaintiffs improperly characterize the three Champion time records as "Defendants' documents," rather than the documents of Champion or the documents of a non-moving co-defendant.  The plaintiffs have not offered any competent evidence or argument that the documents can be properly characterized as the documents of any of the original contractors.  Rather, the face of the documents indicates that the documents are the time records of Champion.  The plaintiffs' improper characterization of the documents is not well-taken by the Court.

[4]    The plaintiffs assert, for each particular job, that the job is a project of one of the three original contractors "according to Defendants' disclosure."  The plaintiffs have not, however, submitted any evidence to support this assertion.  As the original contractor defendants expressly argued that the plaintiffs lack any evidence that they worked overtime on an original contractor project, the plaintiffs' burden was to offer <u>evidence</u>, rather than an unsupported assertion, that they worked on an original contractor project.  This failure to offer evidence that any plaintiff ever worked on an original contractor project is, by itself, sufficient to warrant granting summary judgment in favor of the original contractor defendants.

> for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor in performing any labor, construction or other work included in the subject of the original contract, for labor, and for the requirements imposed by chapters 616A to 617, inclusive, of NRS.

For each plaintiff to maintain a claim against a particular original contractor defendant under §608.150, the plaintiffs must not only show that Champion owes them a labor-related debt, but must further show that Champion accrued that particular debt on a project of the respective original contractor.  Even if Pumarino had offered competent evidence that he worked exclusively on a Warmington project for the week of October 8, 2008, such evidence would be competent only to establish that he worked exclusively on a Warmington project for the week of October 8, 2008.  Stated otherwise, the evidence would be incompetent as evidence that, except for the week of October 8, 2008, he worked exclusively for a week on a Warmington project.  The evidence would also be incompetent as evidence that, at any time, either Hernandez or Buenaventura worked exclusively at a Warmington project for one week.  Accordingly, as neither Hernandnez nor Buenaventura offered any evidence that they ever worked exclusively on a Warmington project for one week, Warmingon is entitled to summary judgment as to the overtime claims of both Hernandez and Buenaventura.  For similar reasons, TCR Nevada is entitled to summary judgment as to both Pumarino and Buenaventura, and KB Home is entitled to summary judgment as to the overtime claims of both Pumarino and Hernandez.

Pumarino's sole remaining original contractor claim–that is, his claim against Warmington for unpaid overtime accrued during the week of October 8, 2008–fails because his evidence does not raise a triable issue of fact that he performed uncompensated overtime work while working on the Warmington project during that work week.  The only evidence before the Court specific to Pumarino's claim against Warmington is Champion's time record indicating that, during the week of Wednesday,

October 8, 2008, Pumarino worked forty-hours.  The Court recognizes that, in opposition to Champion's motion, Pumarino submitted his declaration and deposition testimony of regularly working overtime, or regularly working on Saturdays.  Pumarino also conceded, however, that he could not independently recall ever working on a Warmington project and was unaware that he had actually brought a suit against Warmingtion.  He also conceded working less than forty hours in a week, but could not recall particular weeks in which he worked less than forty hours.  He further conceded that he could not recall any particular week in which he had worked more than forty hours.  Pumarino further acknowledged that the number of hours worked during a week would vary with the seasons.  While an inability to recall working more than forty hours in a particular week does not contradict a recollection of regularly working more than forty hours in a work week, that same lack of recall along with the concession that he did not work more than forty hours in some work weeks precludes an inference of working more than forty hours during any particular week.  In short, while Pumarino may have regularly worked more than forty hours per week, he has not offered any competent evidence that he worked more than forty hours during the particular work week that included October 8, 2008.  Rather, the only evidence he has submitted establishes that he worked only forty hours during that week.

Pumarino counters that, as Champion's records are inaccurate, he has met his evidentiary burden under the *Anderson* burden-shifting analysis.  The argument is without merit for several reasons.  First, the analysis in *Anderson* is irrelevant as Pumarino's claim is against Warmington as an original contractor, not as Pumarino's employer.  The *Anderson* burden-shifting analysis applies only when an employer fails in his duty to maintain accurate records, and then permits and shifts the burden from employee to employer.  As made clear by the Supreme Court in *Anderson*, the analysis applies as the employer has a burden to maintain accurate records, and the employer should not gain the benefit of uncompensated work by means of failing to maintain required records.  Pumarino

1   offers no argument that Warmington, as an original contractor, had an obligation to

2   maintain accurate records of the number of hours he worked.  As between Warmington

3   and Pumarino, it is Pumarino and not Warmington who remains in the better position to

4   maintain a record of hours worked.  This is particularly true where, as in the present

5   circumstance, Pumarino regularly worked on multiple projects during a work week.  In

6   short, as against Warmington, Pumarino cannot rely on the Champion time record as

7   competent evidence that he worked exclusively on the Warmington project but as

8   incompetent evidence of the number of hours worked.  Either the Champion time record is

9   evidence that Pumarino worked forty hours on the Warmington project, or it is incompetent

10  evidence of the number of hours worked and the location of that work.  Under either

11  circumstance, Warmington is entitled to summary judgment.

12       Second, even if the *Anderson* burden-shifting analysis applied against an original

13  contractor under §608.150, the initial burden of evidence rests upon the plaintiff.  Evidence

14  of an inaccurate time record does not, by itself, shift the burden to the defendant.  Rather,

15  evidence of an inaccurate time record modifies the plaintiff's burden to showing both that

16  he performed work for which he was improperly compensated and to further produce

17  sufficient evidence to show the amount and extent of that work as a matter of just and

18  reasonable inference.  Thus, even accepting Pumarino's argument that the time record is

19  inaccurate and unreliable evidence triggering *Anderson,* he has not met his burden of

20  offering any evidence that he performed uncompensated work on the Warmington project

21  during the October 8, 2008, work week, nor has he produced any evidence permitting a just

22  and reasonable inference of the amount and extent of that work.  Rather, and at most,

23  Pumarino has merely alleged (without any citation or reference to evidence) that he worked

24  at least forty hours on a Warmington project.  (Again, Pumarino's argument that the time

25  record is inaccurate and incomplete precludes reliance upon the document as evidence of

26  the location of the work performed and the number of hours worked).  An allegation of

1   working at least forty hours does not meet an employee's burden of raising a just and

2   reasonable inference of working overtime and the amount and extent of that work.  As

3   such, for this additional reason, Warmington is entitled to summary judgment.

4          For similar reasons, TCR Nevada is entitled to summary judgment as to the

5   overtime claims of Hernandez for the week of March 23, 2009, and KB Home is entitled to

6   summary judgment as to the overtime claims of Buenaventura for the week of May 4, 2009.

7   In sum, the original contractor defendant's are entitled to summary judgment on all of the

8   plaintiffs' claims.

9   Motion to Amend

10         The plaintiffs seek to amend their complaint to add an additional original contractor

11  defendant and to again name four officers of Champion, some of whom have an ownership

12  interest, as employer defendants.[5]

13         The Court will deny leave to amend to add an additional original contractor

14  defendant.  The Court has granted summary judgment for the previously named original

15  contractor defendants as the plaintiffs not only lacked any evidence but admitted facts

16  precluding them from establishing or even raising a triable issue of fact whether they

17  performed uncompensated work on any particular project of any particular original

18  contractor.  As such, amendment of the complaint to add Warmington Residential Nevada

19  as a further original contractor defendant would be futile.

20         Whether plaintiffs can amend their complaint to again name the four individuals as

21  employer defendants presents a closer question.  The defendants argue that, as has been

22  shown in discovery, none of the four individuals qualifies as an employer under the FLSA.

23

24

_____

25         [5]    The Court previously dismissed the plaintiffs' complaint against the four
    individuals, as the complaint failed to allege any facts suggesting that any of the four could
26  be considered an employer for purposes of the FLSA.

1  The plaintiffs counter that the Court should consider only whether they have sufficiently

2  alleged facts in their complaint, and that consideration of any evidence is premature.

3      As instructed by the Ninth Circuit:

4      The definition of "employer" under the FLSA is not limited by the common law
       concept of "employer," and is to be given an expansive interpretation in order
5      to effectuate the FLSA's broad remedial purposes. *Real v. Driscoll Strawberry
       Assocs.*, 603 F.2d 748, 754 (9th Cir.1979). The determination of whether an
6      employer-employee relationship exists does not depend on "isolated factors
       but rather upon the circumstances of the whole activity." *Rutherford Food
7      Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772
       (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House
8      Cooperative, Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961).

9  *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir.1983).  In

10  applying the "economic realities" analysis in *Bonnette*, the Ninth Circuit recognized as

11  relevant "whether the alleged employer (1) had the power to hire and fire the employees,

12  (2) supervised and controlled employee work schedules or conditions of employment, (3)

13  determined the rate and method of payment, and (4) maintained employment records."  *Id.,*

14  at 1470.  The circuit court has further recognized that "[w]here an individual exercises

15  'control over the nature and structure of the employment relationship,' or 'economic control'

16  over the relationship, that individual is an employer within the meaning of the Act, and is

17  subject to liability." *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999).

18      In their proposed amended complaint, the plaintiffs allege that Paul DiGuiseppi is a

19  50% owner of Champion, with ultimate authority in decisions such as hiring and firing and

20  establishing rates of pay, and that he coordinates day-to-day operations with Ed Golchuk.

21  The allegations, though somewhat general, are sufficient to permit an inference that Paul

22  DiGuisepp is an employer of the plaintiffs for purposes of the FLSA.

23      The plaintiffs allege that Denise DiGuiseppi is a 50% owner of Champion, the

24  Secretary and Treasurer, and attends meetings of the Board of Directors.  Absent from the

25  plaintiffs' allegations are any facts suggesting that Denise had any authority to hire and fire

26  employees, or supervise or control work schedules or conditions of employment, or

13

1    determine the rate and method of payment, or that she actually maintained employment

2    records.  The plaintiffs have not alleged sufficient facts permitting an inference that Denise

3    DiGuiseppi is an employer.

4           The plaintiffs allege that Ron Ruby is a Vice President of Champion, overseeing

5    operations at Champion, negotiating and signing contracts with general contractors.  They

6    allege he has authority to determine the rate at which workers will be paid and that he is

7    responsible for estimating labor and materials on Champion construction projects.  Finally,

8    the plaintiffs allege that Ruby coordinated day-to-day operations with Paul DiGuiseppi and

9    Golchuk.  The allegations present a close question whether plaintiffs have alleged sufficient

10   facts permitting an inference that Ruby is an employer.  Absent from the proposed

11   complaint is any suggestion that Ruby had any power to hire and fire employees, or that he

12   supervised and controlled employee work schedules or conditions of employment, or that

13   he maintained employment records.  At most, the plaintiffs suggest that Ruby coordinates

14   unspecified day-to-day operations with Paul DiGuiseppi and Golchuk, and that he was

15   responsible for estimating labor and thus (in some way not specified in the complaint) had

16   authority for determining the rate at which workers would be paid.  Looking to the totality of

17   the allegations, the Court finds that the plaintiffs have alleged sufficient facts to allow their

18   FLSA claim to proceed Ruby as an employer.

19          Finally, the plaintiffs allege that Ed Golchuk is a Vice President of Operations at

20   Champion with authority to set rates of pay for the plaintiffs, and decision-making authority

21   over day-to-day operations, and that he is responsible for monitoring compliance with wage

22   and hour laws.  Again, though somewhat general, the allegations are sufficient to permit an

23   FLSA claim to go forward against Golchuk as an employer.

24          The defendants argue Hernandez and Buenaventura also engaged in activities

25   suggesting that they also are employers as to other individuals working for Champion.  The

26   defendants have not offered any citation to any authority, however, that an individual is not

14

an employer with respect to a plaintiff employee because the plaintiff might, under the economic realities analysis, be considered an employer as to other employees.

Accordingly, the Court will deny leave to file the amended complaint as presently proposed, as it improperly names both Warmington Residential and Denise DiGuiseppi as defendants.  Denial of the present motion is without prejudice to the plaintiffs filing a further motion for leave to amend, provided that any proposed amended complaint comports with the present order.

<u>Motion to Certify Collective Action</u>

The parties' briefs suggest that the initial question before the court is whether the Court must review plaintiffs' motion for collective action certification under the first or the second step of the process used and identified in *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987), which process both parties suggest has been adopted by numerous federal courts.   The Fifth Circuit has provided an excellent summary of this two-step process:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision–usually based only on the pleadings and any affidavits which have been submitted–whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives–i.e. the original plaintiffs–proceed to trial on their individual claims.

1   *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).  In their motion, the

2   plaintiffs rely extensively on *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989).

3   While numerous courts have referenced a "certification" and "de-certification" process

4   regarding FLSA collective actions, the Court notes that these terms do not appear in

5   §216(b).  Section 216(b) provides, in relevant part: "An action to recover the liability

6   prescribed in either of the preceding sentences may be maintained against any employer

7   (including a public agency) in any Federal or State court of competent jurisdiction by any

8   one or more employees for and in behalf of himself or themselves and other employees

9   similarly situated. No employee shall be a party plaintiff to any such action unless he gives

10  his consent in writing to become such a party and such consent is filed in the court in which

11  such action is brought."

12         Further, the only use of the term "certification" in the Supreme Court's decision in

13  *Hoffman-La Roche* is in Judge Scalia's dissent, in which he distinguishes the Rule 23

14  process.  *Hoffman-La Roche*, 493 U.S. at 178, Judge Scalia, dissenting.  Rather, the

15  Supreme Court answered the narrow question whether "district courts may play any role in

16  prescribing the terms and conditions of communication from the named plaintiffs to the

17  potential members of the class on whose behalf the collective action has been brought."

18  *Id.*, at 169.  In answer to this question, the Supreme Court held "that district courts have

19  discretion, in appropriate cases, to implement 28 U.S.C. §216(b) . . . by facilitating notice to

20  potential plaintiffs."  *Id.*  While the Supreme Court indicated that district courts have "a

21  managerial responsibility to oversee the joinder of additional parties to assure that the task

22  is accomplished in an efficient and proper way," the Court did not suggest that this process

23  included a Rule 23-type "certification."  Rather, the Supreme Court stated: "Section

24  216(b)'s affirmative permission for employees to proceed on behalf of those similarly

25  situated must grant the court the requisite procedural authority to manage the process of

26  joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to

1  statutory commands or the provisions of the Federal Rules of Civil Procedure. See

2  Fed.Rule Civ.Proc. 83.  It follows that, once [a §216(b)] action is filed, the court has a

3  managerial responsibility to oversee the joinder of additional parties to assure that the task

4  is accomplished in an efficient and proper way." *Id.*, at 170-71.

5      The Eleventh Circuit, in *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1219 (11

6  Cir. 2001) opined that the two-step approach "appears to be an effective tool for district

7  courts to use in managing these often complex cases, and we suggest that district courts in

8  this circuit adopt it in future cases."  As the Eleventh Circuit further recognized: "Nothing in

9  our circuit precedent, however, requires district courts to utilize this approach."  *Id.*

10      As made clear by the plaintiffs and acknowledged by the defendants, the plaintiffs

11  are not requesting a Rule 23 certification.  In light of the lack of any reference to

12  "certification" in §216(b) or in *Hoffman-La Roche*, the Court finds that the use of the term

13  "certification" in connection with the Court's management of a §216(b) collective action, or

14  the granting of "certification" or "de-certification" is inappropriate and results in unnecessary

15  confusion.  As indicated by the Supreme Court, §216(b) grants this Court authority to

16  manage the collective action process.  As suggested by the Eleventh Circuit, the two-step

17  approach provides an effective tool that can be used, but is not required to be used, in the

18  management of an FLSA collective action.  Stated simply, the Court will not "certify" the

19  plaintiffs' collective action, because §216(b) does not require or provide for the

20  "certification" of collective actions.  Rather, §216(b) provides this Court with authority to

21  manage collective actions, and the two-step process is one tool that can be used for

22  effective management.  Recognized as such, the plaintiffs' motion is a request for court

23  management, specifically in regard to obtaining the Court's assistance in providing notice

24  of the action to potential plaintiffs.  Thus, the appropriate application of the Court's

25  management of this action does not rest upon a formulaic reliance on a two-step process,

26

but depends upon the current circumstances and the purposes to be achieved by the process.

As recognized in *Mooney*, the purpose of the first step is a determination whether notice and an opportunity to opt-in should be given to those employees on whose behalf the plaintiffs have alleged to bring the collective action.  The Supreme Court in *Hoffman-La Roche* summarized the facts of that case as "illustrative:"

> Petitioner objected to the form of the notice first sent by respondents'
> counsel, alleging that it was so inaccurate that any consents based on it
> should be found invalid by the court, and at the same time petitioner resisted
> discovery of the names and addresses of the discharged employees.
> Questions of notice, proper discovery, and the validity of consents were
> intertwined.

While determinations at this initial stage are "usually based on the pleadings and any affidavits which have been submitted," this lenient standard does not usually apply merely because the court is asked to decide notice-related issues, but because the court is usually asked to decide notice-related issues prior to or during the earliest stages of discovery when lenient standards govern the court's determinations of the plaintiffs' claims.  If notice-related issues are raised early in the litigation process–i.e., before or during the initial stages of discovery–then decisions will necessarily need to be made, and properly can only be made, by relying upon standards similar to those typically applied during early case management.  Thus, just as a motion to dismiss is determined on a lenient standard of the allegations of a complaint, a notice-related issue that is raised prior to discovery, or perhaps early in the discovery process, must be decided on a similar lenient standard. Conversely, if plaintiffs do not follow a usual course and fail to raise notice-related issues at the outset of the litigation, and instead wait until discovery is completed or largely completed, application of a lenient, early-litigation standard will result in inappropriate management of the case.

1      As further recognized in *Mooney*, the purpose of the second step is to determine

2   whether the §216(b) claim will proceed to trial as a collective action (which will bind both

3   the original and all opt-in plaintiffs) or as an individual action (which will bind only the

4   original plaintiffs, as the opt-in plaintiffs are dismissed from the action without prejudice).

5   As further recognized in *Mooney*, such determinations are usually prompted by a motion

6   brought by the defendants after discovery is largely complete and the matter is ready for

7   trial.  Again, while determinations at this second stage usually rely upon the evidence and

8   require a court to make a factual determination as to whether the opt-in plaintiffs are

9   similarly situated, this more exacting standard does not usually apply merely because the

10  Court is asked to determine whether the action can proceed to trial as a collective action,

11  but because the court is usually asked to make this determination after discovery is largely

12  complete and the matter is ready for trial.  Typical of determinations made at such a time

13  are motions for summary judgment, in which the court looks to evidence and non-moving

14  parties are required to come forward with evidence.  Section 216(b), however, does not

15  require defendants to wait until the close of discovery to seek dismissal of the collective

16  action allegations.  If a defendant seeks dismissal of opt-in plaintiffs at the earliest stages

17  of discovery (or perhaps before discovery has commenced), the court does not apply the

18  more stringent second-step analysis merely because the defendant has moved to dismiss

19  the opt-in plaintiffs.  Rather, in such a circumstance, the appropriate standard to be applied

20  to the defendant's motion would be that generally applied to any motion to dismiss.

21     In sum, the Court recognizes that the two-step process can be an effective tool for

22  managing collective action claims, largely because the two-step process reflects already

23  existing case management tools employed by the parties in litigating any claim.  Issues to

24  be decided before discovery, or at the outset of discovery, are typically decided upon the

25  allegations of the complaint.  Issues to be decided when discovery is largely complete, or

26  completed, are typically decided upon the evidence or lack thereof.  *Hoffman-La Roche*

recognizes that a court has authority, under §216(b) to further manage a collective action by making determinations related to notice to potential opt-in plaintiffs.  Ultimately, the court has authority to manage the process of joining multiple parties in a manner that is orderly and sensible, and what is orderly and sensible depends upon the current status of the litigation.

In the present matter, the plaintiffs have waited until an initial phase of discovery has largely been completed before requesting the Court to rule upon notice-related issues.  The record indicates that, early in the litigation, the parties submitted a joint proposed scheduling order that expressly requested a period of discovery extending beyond the 180-days permitted by local rule, after which the plaintiffs could bring a motion for "certification of Collective Action," which further established a proposed date of 90-days before the close of discovery to add parties, and which anticipated that the parties would file an amended scheduling order after the Court's decision regarding the "motion to certify," (which amended scheduling order would include the deadline for filing dispositive motions and "should additional discovery be deemed necessary").  The Magistrate Judge rejected the proposed dates, and set a date for discovery cut-off consistent with local rules, and further allowing plaintiffs to bring a motion to certify two weeks after the discovery cut-off date.

Inherent to the parties' proposed scheduling order was an expectation, which is reflected in the proposed scheduling order, that further discovery might be appropriate after the Court's decision regarding notice-related issues.  Such further discovery would only be appropriate if a determination was made that notice and an opportunity to opt-in should be given to similarly-situated potential plaintiffs.  Further, such additional discovery would only be appropriate as to issues whether the additional opt-in plaintiffs were similarly-situated.  Conversely, given the lengthy period of discovery requested for just the initial phase of discovery, the Court expects and will decide issues on the basis that the initial phase of discovery was to allow the parties, including the plaintiffs, to complete all discovery

necessary to this action except that discovery which could only occur after the opt-in

plaintiffs, if any, had joined this action.  Further, as discovery was largely completed when

plaintiffs filed their motion, the Court will decide the notice-related issues raised in plaintiffs'

motion based upon standards analogous to those that typically govern litigation when

discovery is completed or largely completed.

As stated, the Court will not "certify" a collective action, or "certify" a class on behalf

of whom the collective action was brought.  Rather, the Court will, as necessary, make a

determination as to whether the plaintiffs have shown that there are similarly-situated

employees to whom notice and an opportunity to opt-in to this action should be given.

The plaintiffs request that notice, and an opportunity to opt-in, be provided to "all

non-salaried workers who performed work for Champion for the time period from March 18,

2007."  They suggest that this broad class is appropriate because Champion had a policy

to "not pay overtime, regardless of whether or not overtime hours are worked."  While

offering their own declarations and deposition testimony, the plaintiffs also rely upon the

declarations of two additional employees of Champion,[6] an uncertified Spanish transcript of

a taped conversation that occurred in Spanish, and an uncertified English translation of that

transcript.

The Court disagrees with Champion's assertion that the plaintiffs have not proffered

sufficient evidence that Champion effectively had a policy of not paying overtime.  While

Champion has offered some evidence that they did pay overtime, such evidence

establishes only that the plaintiffs' assertion that Champion's policy was to never pay

overtime is hyperbole.  Champion's evidence that they have paid overtime does not,

however, dissuade the Court from finding that the plaintiffs have offered sufficient evidence

---

[6]      Much of the declaration of Modesto Orduna is hearsay, and the Court has
only considered such statements made in her declaration that would be admissible if she
were to testify.

1    showing that Champion was aware that its employees were regularly working in excess of

2    forty hours a week, and that its time records indicating otherwise were not accurate.  The

3    evidence also permits an inference that Champion, as a regular practice, did not pay

4    overtime wages.

5          The Court, however, has significant concerns with the broad class suggested by the

6    plaintiffs.  One such concern is exemplified by a point emphasized by Champion regarding

7    the declaration of Julio Arriaga.  Arriaga asserts he "nearly always worked at least 48 hours

8    a week."  Modesta Arduna makes a similar statement in her declaration, asserting that she

9    "worked Monday through Saturday from approximately 7am until 5 or 6pm.  Sometimes I

10   even worked Sundays."  These declarations are consistent with the evidence proffered by

11   the plaintiffs, who do not rely upon any evidence of the number of hours actually worked

12   during any particular week.  Rather, the plaintiffs rely upon a recollection of regularly

13   working full days from Monday through Saturday (and some Sundays).  However, in his

14   declaration, Arriaga also concedes that recently his supervisor "gives [him] much less

15   work."  Each of the plaintiffs, in their depositions, acknowledged a similar decrease in the

16   number of hours worked while they still worked for Champion.  Indeed, the record indicates

17   that each of the plaintiffs is no longer employed by Champion.  This impact of the fact that

18   each of the plaintiffs is a former employee is particularly acute in the present matter since,

19   as conceded by the plaintiffs and acknowledged by Arriaga, the number of hours that

20   plaintiffs once regularly worked decreased prior to their departure.  As the plaintiffs no

21   longer work for Champion, the Court cannot conclude that the plaintiffs would be similarly-

22   situated to employees who first began to work for Champion after their departure.

23         The Court also has an additional, and more significant concern, regarding the extent

24   to which the plaintiffs can be considered similarly situated to other Champion employees.

25   Both Buenaventura and Hernandez conceded, in their depositions, to engaging in the

26   practice of collecting, pooling, and then redistributing the pay of their taping crews.  Their

22

1  deposition testimony reveals that this redistribution was based upon factors that each of

2  them determined to be relevant.  The admission emphasizes at least two distinctions

3  between the plaintiffs and the broad class of "all non-salaried employees of Champion."

4  First, tapers and painters (the two groups of employees actually represented by the

5  plaintiffs) had dissimilar pay and work conditions.  Tapers worked in crews.  Painters

6  typically did not.  If Buenaventura and Hernandez are representative of tapers, then the

7  leader of each taping crew would modify the pay of the members of the crew based upon

8  factors unique to the crew leader.  Conversely, each non-leader member of a taping crew

9  would receive pay modified by factors personal to their crew leader.  In short, both

10  Buenaventura and Hernandez acted to modify the pay Champion distributed to themselves

11  and to members of their crews, not only causing both Buenaventura and Hernandez to be

12  dissimilar to the members of their crews as it relates to pay received from Champion, but

13  causing both to be poor representatives of the crew members.  Further, the testimony of

14  both Buenaventura and Hernandez indicates that each applied an ad hoc redistribution of

15  pay that depended upon factors, and a weight given to those factors, that was particular to

16  each of these plaintiffs and particular to a given week.  Conversely, if Buenaventura and

17  Hernandez are not typical of leaders of taping crews, such fact would establish that neither

18  can be considered similarly situated to either leaders or members of taping crews.  As a

19  result of Buenaventura's and Hernandez's admitted ad hoc redistribution of pay, the Court

20  finds that they are not similarly situated to any other Champion employee.  As each used

21  the pay of other employees to modify their own pay for their own benefit, they are not

22  similar to any employee whose pay was not modified by another Champion employee.

23  They are also not similarly situated to any other Champion employee whose pay was

24  modified by another employee.  Finally, as each used an undocumented method of

25  modifying the pay particular to each week, and particular to factors known only to

26

1   themselves, neither can be considered similarly situated to other employees who modified

2   the pay of other employees for their own benefit.

3          Further, the conduct of Buenaventura and Hernandez and the record as a whole

4   also limits the extent to which the plaintiffs, and in particular Pumarino, are similarly

5   situated to other employees.  The evidence is that employees on at least two taping crews

6   were subject to pay modification by crew leaders.  The plaintiffs have not, however, shown

7   that the practice of pay modification within crews was limited to Buenaventura and

8   Hernandez.  Further, while all three plaintiffs have testified that they regularly worked more

9   than forty hours per week, and while the Court has allowed the plaintiffs to maintain their

10  FLSA claim against Champion on the basis of a recollection of the number of hours

11  regularly worked, the plaintiffs have not made any effort to show that the number of hours

12  regularly worked by tapers is the same as the number of hours regularly worked by painters

13  or, as indicated by the recent declarations of Arriaga and Orduna, by pick-up workers or

14  finishers.  Arriaga (pick-up worker) declared regularly working 48 hours per week.  Orduna

15  (finisher) declared she worked Monday through Saturday from 7 am to 5 or 6 pm (and

16  Sundays).  Ignoring the Sunday work, and assuming Orduna took a full hour each day for

17  lunch, her declaration indicates working 54 to 60 hours.  Thus, while plaintiffs have offered

18  evidence that Champion employees regularly worked overtime for which they were not

19  properly compensated, they have not offered any evidence or even any argument that the

20  number of overtime hours they regularly worked is similar to all, or even any other, non-

21  salaried Champion employee.

22         Accordingly, construing plaintiffs' motion as requesting the Court to determine to

23  whom notice and an opportunity to opt-in should be given, the Court finds that, under the

24  circumstances of the present case, the opportunity to opt-in to this lawsuit should not be

25  extended to any other Champion employee, as the record shows that the plaintiffs are not

26  similarly situated to any other Champion employee.

1    Further, the Court would also note that, in their motion, plaintiffs request the Court to

2  order Champion to promptly produce the names, addresses and telephone numbers of all

3  workers.  Even had the Court determined that Pumarino, as a painter, could maintain his

4  claim as a collective action on behalf of other painters employed by Champion, the Court

5  would deny the request.  Plaintiffs waited until discovery was largely completed, such that

6  Champion's response to the present motion was not even due until discovery was cut-off,

7  before making any formal request to this court that would require Champion to produce this

8  information.  Further, the request itself is limited to a single statement, unsupported by

9  argument or evidence, placed in the conclusion of plaintiffs' motion.  The cursory request is

10  insufficient and, under the circumstances of this case, untimely.

11    In addition, the plaintiffs request that the statute of limitations be tolled for all

12  workers from March 18, 2010, through a date 120 days after notice is mailed.  An equitable

13  tolling of the statute of limitations as requested is not appropriate.  Tolling is appropriate

14  when circumstances beyond the control of other, similarly-situated employees preclude

15  them from bringing a timely claim.  The plaintiffs have not made any showing that other

16  Champion employees have, through no fault of their own, been unable to bring a timely

17  FLSA claim.  Accordingly, for good cause shown,

18    THE COURT **ORDERS** that the Motion for Summary Judgment (#90) brought by

19  TCR Nevada Construction Limited Partnership, Warmington Homes Nevada, Vanguard

20  Construction, LLC., and KB Home Nevada is GRANTED;

21    THE COURT FURTHER **ORDERS** that the Motion for Summary Judgment (#95)

22  brought by Champion Drywall, Inc. of Nevada is GRANTED to the extent that plaintiffs'

23  claims rest upon an allegation of monies owed but not paid on "IOUs," and is otherwise

24  DENIED;

25

26

1    THE COURT FURTHER **ORDERS** that plaintiffs' Motion for Leave to File Second

2    Amended Complaint (#75) is DENIED, but without prejudice to plaintiffs filing a further

3    motion for leave to file an amended complaint that comports with the present order;

4    THE COURT FURTHER **ORDERS** that plaintiffs' Motion for Collective Action

5    Certification and Court-Supervised Notice of Pending Collective Action (#76) is DENIED.

6

7    DATED this _____ day of March, 2012.

8

9    _____

10   Lloyd D. George
     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26