1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

10  MAXIMINO BUENAVENTURA, *et al*.,

11       Plaintiffs,               Case No. 2:10-cv-00377-LDG (NJK)

12  v.                              **ORDER**

13  CHAMPION DRYWALL, INC. OF
     NEVADA, *et al*.,

14

     Defendants.

15

16       The plaintiffs, Maximino Buenaventura, Marcelo Hernandez, and Eloy Pumarino,

17  brought the instant suit pursuant to the Fair Labor Standards Act (FLSA) against

18  defendants Champion Drywall, Inc. of Nevada, Paul DiGuiseppi, Ed Golchuk and Ron

19  Ruby for unpaid overtime compensation.  The plaintiffs now seek partial summary

20  judgment (#131) whether Champion is liable, whether DiGuiseppi, Golchuk and Ruby are

21  employers, whether the burden for calculating damages has shifted to defendants, whether

22  Champion's violations were willful, and whether the plaintiffs are entitled to statutory

23  liquidated damages.  The individual defendants (DiGuiseppi, Golchuk and Ruby) move for

24  summary judgment (#130), asserting that they are not employers.

25

26

1    Motion for Summary Judgment

2        In considering a motion for summary judgment, the court performs "the threshold

3    inquiry of determining whether there is the need for a trial—whether, in other words, there

4    are any genuine factual issues that properly can be resolved only by a finder of fact

5    because they may reasonably be resolved in favor of either party." *Anderson v. Liberty*

6    *Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To succeed on a motion for summary judgment,

7    the moving party must show (1) the lack of a genuine issue of any material fact, and (2)

8    that the court may grant judgment as a matter of law.  Fed. R. Civ. Pro. 56(c);  *Celotex*

9    *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

10       A material fact is one required to prove a basic element of a claim.  *Anderson,* 477

11   U.S. at 248.  The failure to show a fact essential to one element, however, "necessarily

12   renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

13       "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after

14   adequate time for discovery and upon motion, against a party who fails to make a showing

15   sufficient to establish the existence of an element essential to that party's case, and on

16   which that party will bear the burden of proof at trial."  *Id*.  "Of course, a party seeking

17   summary judgment always bears the initial responsibility of informing the district court of

18   the basis for its motion, and identifying those portions of 'the pleadings, depositions,

19   answers to interrogatories, and admissions on file, together with the affidavits, if any,' which

20   it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S.

21   at 323.  As such, when the non-moving party bears the initial burden of proving, at trial, the

22   claim or defense that the motion for summary judgment places in issue, the moving party

23   can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the

24   district court–that there is an absence of evidence to support the nonmoving party's case."

25   *Celotex*, 477 U.S. at 325.  Conversely, when the burden of proof at trial rests on the party

26

1 moving for summary judgment, then in moving for summary judgment the party must

2 establish each element of its case.

3    Once the moving party meets its initial burden on summary judgment, the non-

4 moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro.

5 56(e).  As summary judgment allows a court "to isolate and dispose of factually

6 unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the

7 evidence before it "in the light most favorable to the opposing party."  *Adickes v. S. H.*

8 *Kress & Co.*, 398 U.S. 144, 157 (1970).  The allegations or denials of a pleading, however,

9 will not defeat a well-founded motion.  Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co.*

10 *v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

11    Analysis - Champion

12    Champion is an enterprise engaged in commerce or in the production of goods for

13 commerce within the meaning of 29 U.S.C. §203(s).  Champion employed each of the

14 plaintiffs.  *See* 29 U.S.C. §203(d), (e), (g).  Accordingly, Champion could not employ any of

15 the plaintiffs for a workweek of more than 40 hours unless Champion paid overtime

16 compensation for the hours worked in excess of 40.[1]  *See* 29 U.S.C. §207(a)(1).  Overtime

17 compensation is a rate of pay not less than one and one-half times the regular rate of pay.

18 *Id.*  Champion has not claimed any exemption to its obligation to pay overtime

19 compensation to the plaintiffs for overtime work.  In this context, the Supreme Court long

20 ago established the appropriate burdens of proof governing this Court's analysis:

21    An employee who brings suit . . . for . . . unpaid overtime
compensation, together with liquidated damages, has the burden of proving
that he performed work for which he was not properly compensated. The
22    remedial nature of this statute and the great public policy which it embodies,
however, militate against making that burden an impossible hurdle for the
23    employee. Due regard must be given to the fact that it is the employer who
has the duty . . . to keep proper records of wages, hours and other conditions
24

25

26    [1]    For brevity, the Court will refer to hours worked in excess of 40 hours in a
workweek as overtime, overtime hours, or overtime work, as indicated by the context.

3

and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-88 (1946).

The initial issue that must be resolved is whether, as was its duty, Champion kept proper and accurate records by which the plaintiffs can discharge their initial burden of proving that they worked overtime hours for which they were not properly compensated. Even the most cursory review of the record readily establishes that Champion did not meet its duty of keeping proper and accurate records. The plaintiffs worked as tapers and painters and were paid piece rate. Plaintiffs' counsel has submitted a declaration indicating significant deficiencies in the records produced by Champion, including undated time sheets and unsigned time sheets. She further states that, on every time sheet, hours worked are stated in multiples of eight. The plaintiffs' testimony, however, reveals a pattern of regularly working more than eight hours in a day, and often working more than five days in a week. Two of the plaintiffs testified that they never saw a time sheet or recorded the number of hours worked, but rather that their foreman completed the time sheets. The

1    plaintiffs testified to working on Saturdays and some Sundays, but their time sheets did not

2    even provide a place to record hours worked on either of these days.  One of the plaintiffs

3    testified that he recorded pieces completed, not hours.  He further testified that the hours

4    recorded on his time sheet were not in his handwriting, and that he was told to sign time

5    sheets that under-reported his hours.

6           Champion's only response to this evidence is to assert that the plaintiffs' testimony

7    is self-serving and inconsistent, and to assert that some testimony by the plaintiffs indicates

8    there is a reason to place some trust in the time sheets.  Champion does not offer any

9    evidence suggesting that any of its time sheets can be trusted for any purpose other than,

10   perhaps, indicating weekdays on which the plaintiffs did not perform any work.  Champion

11   does not offer the evidence of the process or methods it used to ensure the records were

12   accurate.  Champion does not offer any evidence rebutting the testimony of the plaintiffs

13   that they did not record the hours actually worked on the time sheets.  Champion does not

14   offer any evidence from the individual or individuals who actually recorded the hours on the

15   time sheets.  Champion fails to point to any evidence permitting an inference that the

16   persons recording hours worked were doing so accurately, or even had the capacity to

17   know the hours actually worked.  Though Champion paid by the piece, Champion offers no

18   explanation or evidence suggesting that its time-sheets nevertheless were accurate in

19   recording that the plaintiffs always worked 8 hours (never more, never less) on the days

20   they worked.  In sum, Champion has not offered any evidence suggesting that it kept

21   proper and accurate records by which plaintiffs could easily discharge their burden of

22   showing they performed overtime work for which they were not properly compensated.

23   Accordingly, each of plaintiffs can meet their burden of proof by showing "that he has in

24   fact performed work for which he was improperly compensated and if he produces

25   sufficient evidence to show the amount and extent of that work as a matter of just and

26   reasonable inference."

1    The next issue before the Court is whether the plaintiffs have shown that they

2  performed at least some overtime work for which they were not properly compensated.

3  Each of the plaintiffs has testified to facts permitting such a conclusion.  They have testified

4  of typical start and finish times that required more than 8 hours of work in a day.  They

5  testified of regularly working six days in a week, and sometimes seven days.  Champion

6  responds by arguing that the plaintiffs also admitted working less than 40 hours in some

7  weeks.  That the plaintiffs worked less than 40 hours in some weeks does not rebut the

8  plaintiffs' testimony that they worked more than 40 hours on other weeks.  That plaintiffs

9  would experience periods when they regularly worked less than 40 hours in a week does

10  not rebut their testimony that they would also experience periods in which they regularly

11  worked more than 40 hours in a week.  Champion notes the testimony of plaintiffs

12  concerning specific time sheets.  Such testimony, however, serves only to emphasize that

13  plaintiffs' general recollection, rather than suspect time sheets, are the best evidence

14  whether plaintiffs performed overtime work for which they were not compensated.  Stated

15  succinctly, the plaintiffs' initial burden is not to establish that they performed overtime work

16  each and every week, or even that they performed overtime work a majority of weeks.

17  Rather, the plaintiffs' initial burden is to proffer evidence that they performed work for which

18  they were not properly compensated.  The plaintiffs have offered testimony that they have

19  worked more than 40 hours a week.  Champion has not offered any evidence permitting

20  even the speculation that the plaintiffs never worked more than 40 hours in any week.

21    Champion does not even attempt to argue that it has ever paid any of the plaintiffs

22  overtime compensation.

23    Accordingly, the Court finds that the plaintiffs have met their burden of showing that

24  they performed overtime work for which they have not been properly compensated.

25    The plaintiffs' present motion, however, makes no effort to argue or show that they

26  have "sufficient evidence to show the amount and extent of that work as a matter of just

1   and reasonable inference." The instruction of the Supreme Court in *Mt. Clemens* is that

2   "an employee has carried out his burden if he proves that he has in fact performed work for

3   which he was improperly compensated <u>and</u> if he produces sufficient evidence to show the

4   amount and extent of that work as a matter of just and reasonable inference." This holding

5   indicates that an employer's liability does not arise until the employee meets his burden by

6   showing <u>both</u> that he performed work for which he was not properly compensated <u>and</u> the

7   amount and extent of that work as a matter of just and reasonable inference. The Court

8   cannot find, as a matter of law, that Champion is liable for unpaid overtime wages in the

9   absence of evidence of the amount and extent of that work as a matter of just and

10  reasonable inference.

11       Similarly, the Court cannot conclude that plaintiffs are entitled to the *Mt. Clemens*

12  burden-shifting, as they have not met their initial burden of showing both uncompensated

13  work and the amount and extent of that work. At most, and as indicated above, the

14  plaintiffs have established only that Champion did not maintain accurate records, and thus

15  that the plaintiffs can meet their initial burden by proving they have performed work for

16  which they were improperly compensated and offering sufficient evidence of the amount

17  and extent of that work as a matter of just and reasonable inference.

18       In light of the Court's conclusion that the plaintiffs have not established that

19  Champion is liable as a matter of law, the Court will not consider whether Champion's

20  alleged violation was willful, or whether that the alleged violation entitles plaintiffs to

21  statutory liquidated damages.

22       Analysis - The Individual Defendants

23       The individual defendants have moved for summary judgment, asserting that as a

24  matter of law they are not "employers" of the plaintiffs, as that term is defined in the FLSA.

25  The plaintiffs' motion seeks the converse ruling: that the individual defendants are, as a

26  matter of law, employers of the plaintiffs.

1         The term "employer" is defined in the FLSA as "any person acting directly or

2 indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. §203(d).

3 The Ninth Circuit has instructed that the determination of the existence of an

4 employer-employee relationship is based upon "the circumstances of the whole activity . . ."

5 where "[t]he touchstone is the 'economic reality' of the relationship." *Boucher v. Shaw*, 572

6 F.3d 1087, 1091 (9ᵗʰ Cir. 2009); *see also, Bonnette v. California Health & Welfare Agency*,

7 704 F.2d 1465 (9ᵗʰ Cir. 1983).   As the Fifth Circuit recently recognized, "[t]he test originates

8 in the Supreme Court's holding that 'economic reality' should govern the determination of

9 employer status under the FLSA."  *Gray v. Powers,* 673 F.3d 352, 355 (5ᵗʰ Cir. 2012) (citing

10 *Goldberg v. Whitaker House Coop*., 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100

11 (1961)).   In applying the "economic realities" analysis in *Bonnette*, the Ninth Circuit

12 recognized as relevant "whether the alleged employer (1) had the power to hire and fire the

13 employees, (2) supervised and controlled employee work schedules or conditions of

14 employment, (3) determined the rate and method of payment, and (4) maintained

15 employment records."  *Id.,* at 1470.  The circuit court has further recognized that "[w]here

16 an individual exercises 'control over the nature and structure of the employment

17 relationship,' or 'economic control' over the relationship, that individual is an employer

18 within the meaning of the Act, and is subject to liability."  *Lambert v. Ackerley*, 180 F.3d

19 997, 1012 (9ᵗʰ Cir. 1999).

20         In their motion, the individual defendants rely heavily upon the Fifth Circuit's decision

21 in *Gray,* noting that circuit's decision "decline[d] to adopt a rule that would potentially

22 impose individual liability on all shareholders, members, and officers of entities that are

23 employers under the FLSA based upon their position rather than the economic reality of

24 their involvement in the company." *Gray*, at 357.  A review of Gray indicates that a

25 bartender sought to hold one (of several) members of a limited liability corporation liable as

26 an employer.  The Fifth Circuit rejected the bartender's argument that the member's power

1    to hire and fire employees should be inferred solely from his position as a member and

2    officer of the limited liability corporation.  The court also rejected the argument that the

3    member's supervision or control of employee work schedules could be inferred from the

4    LLC's hiring of the bartender's manager.  And, as relevant to this motion, the Fifth Circuit

5    determined that the member's authority to sign checks and the member's receipt of

6    information indicating the tips earned by bartenders did not raise an inference that the

7    member determined the rate or method of the bartender's payment.  As noted in Gray, the

8    member rarely visited the bartender's place of employment, which was owned by the LLC.

9         In considering the individual defendants' motion, the Court must construe the

10   evidence in the light most favorable to the plaintiffs.  At a minimum, that evidence (when

11   viewed in the light most favorable to plaintiffs) precludes summary judgment in favor of the

12   defendants.  The purpose to the test outlined in *Bonnette* is to permit a determination when

13   an individual owner or officer has operational control within the company sufficient to

14   render him individually liable under the FLSA as an employer.  *Bonnette* does not require

15   evidence that the individual directly exercised operational control over a plaintiff-employee.

16   The individual defendants rest their arguments upon an apparent effort to establish that the

17   plaintiffs' direct supervisor, and only that direct supervisor, had the authority to hire and fire

18   the plaintiffs, or to set work schedules or conditions of employment, or determine the rate

19   of pay.  They further argue an absence of any evidence that they, as officers at Champion,

20   were the individuals who maintained employment records.  The defendants' arguments,

21   however, prove too much.  At a minimum, the evidence before the court permits an

22   inference that Champion's organizational hierarchy gave significant operational control over

23   Champion to each of the individual defendants.  Nevertheless, the defendants' argument

24   rests upon the premise that the only individual actually exercising any control over any

25   aspect of the plaintiffs' employment was their direct supervisor.  Champion does not offer

26   any evidence that the direct supervisor answered to any individual within Champion.  Thus,

1  in some unstated way, Champion delegated all authority to determine all conditions of

2  employment, including hiring, firing, scheduling, pay, and methods of determining pay to a

3  supervisor that, apparently, answered to no one at Champion.  In contrast to *Gray,* the

4  individual defendants in this matter are not merely a member of an LLC, but are officers

5  with significant operational control of Champion.  DiGuiseppi is a 50% owner of Champion

6  and is its President.  Golchuk is Champion's Operational Manager / Vice President of

7  Operations.  Among his duties, he was responsible for maintaining payroll records and

8  would check on payroll, including checking to make sure that time-sheets were signed and

9  dated.  Golchuk had authority to decide the rate of piece work pay, that is, the cents-per-

10 square-foot that Champion's employees were paid.  Golchuk reported to DiGuiseppi, and

11 Champion's supervisors reported to Golchuk.  Ruby was a vice-president of Champion who

12 reported to DiGuiseppi and supervised Golchuk.  DiGuiseppi was fully aware that

13 Champion determined employee compensation for tapers and painters using a piece rate

14 system, which he preferred over an hourly rate system because, under an hourly system,

15 no one would work because the employees would have no incentive to work.  All three

16 individuals were involved in the process of generating estimates as part of the process of

17 generating bids for work.  DiGuiseppi and Ruby communicated with contractors regarding

18 production schedules.  The individual defendants in this matter were not merely a member

19 of an LLC, for whom there is an absence of any evidence of operational control extending

20 to the economic realities of the plaintiffs' employment.  Rather, the evidence is sufficient to

21 raise a triable issue of fact that these defendants exercised, or at least had the duty to

22 exercise, control over the economic realities of the plaintiffs' employment.  Accordingly, the

23 Court cannot find, as a matter of law, that they were not "employers."

24        Conversely, however, neither are the plaintiffs entitled to a ruling, as a matter of law,

25 that any of the individual defendants are employers.  In considering the plaintiffs' motion,

26 that same evidence must be construed in favor of the defendants.  So construed, the court

1  must acknowledge that the plaintiffs' evidence is circumstantial.  The plaintiffs rely almost

2  exclusively on establishing that the defendants were individuals with significant control over

3  some aspect of the daily operations of Champion, and that the nature of that control

4  permits an inference that the control extended to the plaintiffs' employment.  Such an

5  inference, however, arises from construing the evidence in favor of plaintiffs and

6  disappears when construing the evidence in favor of defendants.

7         Accordingly,

8         THE COURT **ORDERS** that the Individual Defendants' Motion for Summary

9  Judgment (#130) is DENIED;

10        THE COURT FURTHER **ORDERS** that the Plaintiffs' Motion for Partial Summary

11 Judgment (#131) is DENIED.

12

13 DATED this ___ day of March, 2013.

14

15                                          Lloyd D. George
                                            United States District Judge
16

17

18

19

20

21

22

23

24

25

26